FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 08, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATIE S.,<br><br>   Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>   Defendant. | No. 2:19-CV-0256-JTR<br><br>ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Dana C. Madsen represents Katie S. (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income in October 2016, alleging disability since November 20, 1991, due to ADD, back pain,

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

depression, and bipolar disorder. Tr. 241, 270. The application was denied initially and upon reconsideration. Administrative Law Judge (ALJ) Lori L. Freund held a hearing on February 5, 2018. Tr. 83-127. Plaintiff was unrepresented at the time of the hearing. Tr. 88-89. The ALJ issued an unfavorable decision on June 11, 2018, Tr. 20-33, and the Appeals Council denied Plaintiff's request for review on May 29, 2019. Tr. 1-6. The ALJ's June 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 24, 2019. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born on June 2, 1986, and was 30 years old on the disability application date, October 28, 2016. Tr. 241. She completed high school in 2004 while attending special education classes throughout. Tr. 113, 271, 457, 617. Plaintiff testified at the administrative hearing on February 5, 2018, that she last worked in July of 2017. Tr. 100. She had been working part-time helping with clean up at her apartment complex. Tr. 101. At the end of 2015 and the first half of 2016, she worked part-time as a breakfast attendant at a La Quinta hotel. Tr. 102. She also has past work as a gas station attendant. Tr. 104. Plaintiff's disability report indicates she stopped working in September 2016 when she was released from her job due to performance issues. Tr. 270. Plaintiff testified she can no longer work because she has back and neck pain as a result of being hit by a car in 2012. Tr. 106-107.

Plaintiff stated at the administrative hearing that in addition to her neck and back pain, she attended counseling and received medication for mental health issues. Tr. 112. She indicated she had never had a driver's license but was able to get around with the help of her mother and by taking a bus and was able to go to the store and shop, do her laundry, and cook. Tr. 115-117.

///

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant

from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On June 11, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 28, 2016, the disability application date. Tr. 24.

At step two, the ALJ determined Plaintiff had the following severe impairments: obesity, bipolar disorder, attention deficit hyperactivity disorder (ADHD), cognitive disorder, and eating disorder. Tr. 24.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 25.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform medium exertion level work with the following limitations: she was limited to simple, repetitive tasks with no more than occasional changes in the work setting; she was precluded from fast-paced production work; she was limited to brief, superficial interaction with the public and occasional interaction with coworkers; and she was precluded from the performance of tandem tasks or "over the shoulder" supervision. Tr. 27.

At step four, the ALJ found Plaintiff was not able to perform her past relevant work. Tr. 31-32.

///

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of laundry worker II, office cleaner, and small parts assembler. Tr. 32-33.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 28, 2016, the disability application date, through the date of the ALJ's decision, June 11, 2018. Tr. 33.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff raises the following issues of review: (1) Did the ALJ improperly discredit Plaintiff's symptom claims; (2) Did the ALJ fail to properly consider and weigh the opinion evidence; (3) Did Plaintiff meet the listings of impairment; and (4) are the errors harmless? ECF No. 14 at 14.

## DISCUSSION

**A.    Medical Opinion Evidence**

Plaintiff argues the ALJ erred by failing to properly consider and weigh the medical opinion evidence of record. ECF No. 14 at 16. Plaintiff specifically asserts the ALJ erred by rejecting the opinions of examining medical professionals David Dixon, Ph.D., John Arnold, Ph.D., and Debra Brown, Ph.D., and instead relying on the opinions of nonexamining medical expert Nancy Winfrey, Ph.D., and reviewing state agency medical consultants. ECF No. 14 at 16-19.

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither

examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding a nonexamining doctor's opinion "with nothing more" does not constitute substantial evidence).

In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must also set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

On February 15, 2017, state agency physician Kent Reade, Ph.D., reviewed the record and opined that Plaintiff was moderately limited in her abilities to understand, remember or apply information; interact with others; concentrate, persist or maintain pace; and adapt or mange oneself. Tr. 158. Dr. Reade found Plaintiff did experience some cognitive/intellectual deficits, but her functional abilities were in excess of what would be expected with a mild intellectual disability. Tr. 159. He wrote that Plaintiff retained the capacity to carry out simple one-to-three step instructions; maintain concentration, persistence and pace for up to two hours continuously; maintain adequate attendance; and complete a normal workday/workweek within normal tolerances of a competitive workplace; however, she would not be able to carry out tasks that were more detailed on a consistent and regular basis. Tr. 161. He further wrote Plaintiff would have

occasional difficulties with adapting to change, but would be able to adapt to normal, routine changes in a competitive workplace within normal tolerances. Tr. 162. On April 26, 2017, state agency reviewer Sharon Underwood, Ph.D., mirrored the opinions of Dr. Reade. Tr. 172-176.

Nonexamining medical expert Nancy Winfrey, Ph.D., testified on February 5, 2018, that Plaintiff had moderate limitations in her abilities to understand, remember and apply information; interact with others; concentrate and persist; and adapt or manage oneself. Tr. 97-98. She opined Plaintiff was capable of performing simple, routine and repetitive work in a low stress job with no teamwork or tandem work, no over-the-shoulder supervision, and only superficial, occasional contact with the public. Tr. 99. Dr. Winfrey also indicated Plaintiff would not be able to perform fast-pace or strict production quota work. Tr. 99.

In December 2011, nearly five years prior to the disability application date in this case (October 28, 2016), David Dixon, Ph.D., reviewed the record (which revealed a 2004 full scale IQ score of 65) and examined Plaintiff. Tr. 600. Dr. Dixon found Plaintiff's mood and affect appropriate to thought content, intellectual functioning to be within the borderline to low average range, recent memory grossly intact, ability to think conceptually fair, and comprehension problematic. Tr. 602. He determined that Plaintiff's vocabulary, ability to reason and persistence were poor; her ability to understand was below average to borderline; her ability to sustain concentration was difficult to assess; her ability to interact socially was affected by immaturity; she would adapt to new environmental conditions; and she was not capable of handling funds on her own behalf. Tr. 604. It was noted Plaintiff was difficult to evaluate due to minimal effort. Tr. 604.

During the relevant time period, in March 2016, Debra D. Brown, Ph.D., completed a psychological/psychiatric evaluation of Plaintiff. Tr. 616-623. Dr. Brown diagnosed severe mental retardation and moderate depression, Tr. 619, and opined that Plaintiff had several marked and moderate limitations with respect to

her ability to perform basic work activities as well as a severe limitation in her ability to learn new tasks, Tr. 621.  It was noted Plaintiff's memory, fund of knowledge, concentration, abstract thought, and insight and judgment were not within normal limits.  Tr. 622.

In February 2017, Dennis Dyck, Ph.D., completed a mental evaluation of Plaintiff.  Tr. 456-459.  Examiner Dyck noted Plaintiff was cooperative, her mood was euthymic and appropriate, she was partially oriented, she had an inadequate fund of knowledge, she was able to follow a three-step command and had no difficulty following conversation, her concentration and abstract thinking were moderately to markedly impaired, and her insight was "compromised markedly due to mental retardation."  Tr. 458.  He diagnosed cognitive disorder, not otherwise specified, and dysthymia and noted her prognosis was poor.  Tr. 458.  Dr. Dyck concluded Plaintiff had several "markedly impaired" functional abilities.  Tr. 459.

John F. Arnold, Ph.D., completed a psychological/psychiatric evaluation of Plaintiff in December 2017.  Tr. 587-591.  Dr. Arnold opined that Plaintiff had several marked and moderate limitations with respect to her ability to perform basic work activities as well as severe limitations with her abilities to adapt to changes in a routine work setting and maintain appropriate behavior in a work setting.  Tr. 589.  It was noted her thought process and content, orientation, perception, and memory were within normal limits, but her fund of knowledge, concentration, abstract thought, and insight and judgment were not within normal limits.  Tr. 591.

In reaching her RFC determination, the ALJ gave "little weight" to all of the foregoing examining doctors and instead accorded controlling weight to the above noted nonexamining medical professionals.  Tr. 29-31.  The ALJ provided the following reasons for rejecting the opinions of Drs. Dixon, Brown, Dyck and Arnold:  they were internally inconsistent (Brown, Dyck and Arnold), not

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 8

1  supported by the bulk of the record evidence (Brown, Dyck and Arnold), based
2  largely on Plaintiff's subjective reports (Dyck), produced outside of the relevant
3  time period (Dixon), and inconsistent with Plaintiff's limited mental health
4  treatment and daily activities (Brown).  Tr. 29-30.

5  With respect to Dr. Dyck, a physician's opinion may be disregarded when it
6  is premised on the properly rejected subjective complaints of Plaintiff.  *Tonapetyan*
7  *v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Here, however, the ALJ failed to
8  provide substantiation for the bare assertion that Dr. Dyck relied entirely on
9  Plaintiff subjective reports.  Tr. 29.  To the contrary, the record reflects Dr. Dyck
10 performed a proper mental status examination of Plaintiff, basing his opinions on a
11 review of other evaluations of record, his interview of Plaintiff, and the results of
12 his overall examination.  Tr. 456-459.  Moreover, the Court does not find that Dr.
13 Dyck's report is internally inconsistent as determined by the ALJ.  *See Tommasetti*
14 *v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (rejection of an examining medical
15 source opinion is specific and legitimate where the medical source's opinion is not
16 supported by his or her own medical records and/or objective data).  While Dr.
17 Dyck did note that Plaintiff was cooperative, was able to follow a three-step
18 command and had no difficulty following conversation, he also found she was only
19 partially oriented, she had an inadequate fund of knowledge, her concentration and
20 abstract thinking were moderately to markedly impaired, and her insight was
21 compromised markedly.  Tr. 458.  Dr. Dyck's opinions are supported by his
22 examination findings.  The Court also notes the ALJ failed to describe how any
23 particular record evidence, or "bulk of records," Tr. 29, specifically contradicted
24 the opinions of Dr. Dyck.  *See Brown-Hunter*, 806 F.3d at 492 (finding the agency
25 must set forth reasoning behind its decisions in a way that allows for meaningful
26 review).  Therefore, the ALJ's reasons for rejecting Dr. Dyck's opinions are not
27 supported.
28 ///

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 9

1    Next, as to Dr. Brown, the ALJ's statement that Dr. Brown "relies almost
exclusively on previous psychological testing, rather than her own observations
and test results" is uncorroborated. Dr. Brown administered psychological testing
and reviewed Plaintiff's treatment records to find Plaintiff's memory, fund of
knowledge, concentration, abstract thought, and insight and judgment were not
within normal limits. Tr. 616-623. The ALJ also failed to show precisely how Dr.
Brown's report was "somewhat inconsistent with itself." Tr. 30. Furthermore, the
ALJ did not specify how any of Dr. Brown's conclusions were contradicted by
Plaintiff's mental health treatment history and daily activities. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). The ALJ's rationale pertaining to Dr. Brown lacks support.

Turning to Dr. Arnold, the ALJ again failed to show how the report is internally inconsistent. As with the other examining medical professionals, Dr. Arnold reviewed Plaintiff's records and administered psychological testing. Tr. 587-588. Although Dr. Arnold indicates Plaintiff's thought process and content, orientation, perception, and memory were within normal limits on exam, the report additionally notes that Plaintiff's fund of knowledge, concentration, abstract thought, and insight and judgment were not within normal limits. Tr. 591. There is no showing that Dr. Arnold's opinions are inconsistent with his examination findings. The ALJ further failed to explain or demonstrate how the "bulk of record evidence," Tr. 30, specifically contradicted the opinions of Dr. Arnold. *See Brown-Hunter*, 806 F.3d at 492. The ALJ's reasoning as to Dr. Arnold is also unsupported.

Finally, while the report of Dr. Dixon predates the relevant time period in this case, *see Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (finding medical

opinions that predate the alleged onset of disability are of limited relevance), his opinions, coupled with the post-application date conclusions of examining physicians Brown, Dyck and Arnold, indicate Plaintiff's mental functioning is limited to a greater extent than as expressed by the nonexamining medical professionals.

Based on the foregoing, the ALJ's rationale for discounting the reports of all examining psychological medical professionals of record is not properly supported. Moreover, the ALJ did not cite any medical source opinion evidence, other than the above noted nonexaminers, in support of her conclusions with respect to Plaintiff's level of mental functioning. As noted above, the opinions of the nonexamining medical professionals cannot alone justify the rejection of the opinions of these examining doctors. *Lester*, 81 F.3d at 830. The Court thus finds the ALJ's analysis of the mental health evidence of record is deficient. A remand is required for reconsideration of the reports of Drs. Dixon,[1] Brown, Dyck and Arnold and for further development of the record with respect to Plaintiff's mental impairments.

**B.    Step Three**

Plaintiff argues the ALJ also erred by failing to properly assess whether she met Listing 12.05 due to her low IQ and low achievement level. ECF No. 14 at 19.

The Listings describe, for each of the major body systems, impairments that are severe enough to prevent an individual from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 416.925(a). Each

---

[1]The Court notes Dr. Dixon's December 2011 report greatly predates the relevant time period in this action and is thus of limited relevance. *Fair*, 885 F.2d at 600. On remand, the ALJ shall be instructed to review his report and accord it appropriate weight to the extent it is found to bear upon Plaintiff's condition during the relevant period at issue in this matter.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 11

Listing specifies the objective medical and other findings needed to satisfy the criteria of that Listing.  A diagnosis alone is insufficient; a medically-determinable impairment must also satisfy all of the criteria of the Listing, 20 C.F.R. § 416.925(d), and Plaintiff bears the burden of establishing that an impairment satisfies the requirements of the Listing, *Tackett*, 180 F.3d at 1098-1099; 20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Citing Listings 12.04, 12.05, 12.11 and 12.13, the ALJ determined "claimant's mental impairments" did not meet or medically equal the requirements of these Listings.  Tr. 25-26.  The ALJ specifically found Plaintiff's mental limitations did not satisfy the paragraph "B" criteria required for Listing 12.05.  Tr. 25-26.

To meet Listing 12.05, intellectual disorder, Plaintiff must establish the following three "A" criteria:

> (1) Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
>
> (2) Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
>
> (3) The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.
>
> **OR** the following three "B" criteria:
>
> (1) Significantly subaverage general intellectual functioning evidenced by a or b:
>
>> (a) A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    (b) A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

 (2) Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    (a) Understand, remember, or apply information (see 12.00E1); or
    (b) Interact with others (see 12.00E2); or
    (c) Concentrate, persist, or maintain pace (see 12.00E3); or
    (d) Adapt or manage oneself (see 12.00E4); and

 (3) The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

 Given this Court's determination that the ALJ erred by rejecting all examining medical source opinion evidence pertaining to Plaintiff's mental functioning, *see supra*, the Court finds the matter shall also be remanded for the ALJ to reassess Plaintiff's mental impairments at step three of the sequential evaluation process. On remand, the ALJ shall specifically reexamine whether Plaintiff met or equaled Listing 12.05, intellectual disorder, in addition to any other relevant Listing.

**C. Plaintiff's Subjective Complaints**

 Plaintiff also contends the ALJ erred by improperly discrediting her subjective complaints. ECF No. 14 at 14-16.

 It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the

ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 28. The ALJ listed the following reasons for finding Plaintiff's subjective complaints not persuasive in this case: (1) Plaintiff's level of daily activity did not support a more limiting RFC than assessed; (2) Plaintiff had a history of noncompliance with treatment directives; (3) Plaintiff's pain was controlled with over-the-counter medications; and (4) Plaintiff displayed poor effort on examinations. Tr. 28.

While some of the reasons provided by the ALJ for discounting Plaintiff's testimony may be supported by the evidence of record, this matter must be remanded for additional proceedings to remedy the above noted defects. *See supra*. Accordingly, on remand, the ALJ shall also reconsider Plaintiff's statements and testimony and reassess what statements, if any, are not credible and, if deemed not credible, what specific evidence undermines those statements.

## CONCLUSION

Plaintiff asserts that the ALJ errors are not harmless and caused ancillary errors. ECF No. 14 at 20-21. Plaintiff thus argues the ALJ's decision should be reversed and Plaintiff found to be entitled to benefits. ECF No. 14 at 21.

1    The Court has the discretion to remand the case for additional evidence and
2 findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award
3 benefits if the record is fully developed and further administrative proceedings
4 would serve no useful purpose. *Id*. Remand is appropriate when additional
5 administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d
6 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is
7 necessary for a proper determination to be made.

8    On remand, the ALJ shall reassess Plaintiff's mental impairments and
9 limitations. The ALJ shall reconsider the opinions of Drs. Dixon, Brown, Dyck
10 and Arnold and all other medical evidence of record relevant to Plaintiff's claim
11 for disability benefits. The ALJ shall further develop the record by directing
12 Plaintiff to undergo a new consultative psychological examination to assist the ALJ
13 in assessing Plaintiff's functioning during the relevant time period. The ALJ shall
14 also reassess Plaintiff's mental impairments and functioning at step three of the
15 sequential evaluation process and specifically reexamine whether Plaintiff met or
16 equaled Listing 12.05, intellectual disorder. The ALJ shall reevaluate Plaintiff's
17 subjective complaints, formulate a new RFC determination, obtain supplemental
18 testimony from a vocational expert, if necessary, and take into consideration any
19 other evidence or testimony relevant to Plaintiff's disability claim.

20    Accordingly, **IT IS ORDERED:**
21    1.   Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is
22 **GRANTED IN PART**.
23    2.   Defendant's Motion for Summary Judgment, **ECF No. 15**, is
24 **DENIED**.
25    3.   The matter is **REMANDED** to the Commissioner for additional
26 proceedings consistent with this Order.
27    4.   An application for attorney fees may be filed by separate motion.
28 ///

1   The District Court Executive is directed to file this Order and provide a copy
2   to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and
3   the file shall be **CLOSED**.
4   DATED September 8, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 16